JOSÉ EUGENIO SÁNCHEZ RIVERA, ET AL., ETC., Petitioners, v. DISTRICT COURT OF BAYAMÓN, HON. F. GALLARDO DÍAZ, JUDGE, Respondent; ENGRACIA SANTOS, Intervener.

No. 1748. Argued November 15, 1948.—Decided January 19, 1949.

---

458

L. *Santiago Carmona, Félix Ochoteco, Jr.*, and *Luis E. Dubón* for petitioners. *José C. Jusino* for intervener.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Engracia Santos, in her capacity as legitimate mother of Eugenio Sánchez Santos, on November 24, 1947, filed a motion in the lower court seeking the judicial administration of the property left by her deceased son. She alleged that he had died single on August 9, 1947 *ab intestato*, leaving two natural children which he had with Irma Rivera, a resident of Bayamón and another natural son, who about that time had filed an action of filiation. She referred to the property, as of considerable value, and alleged that it was apt to be squandered by Irma Rivera who had taken possession thereof. Finally she prayed that, pursuant to § 563 of the Code of Civil Procedure, the marshal be ordered to henceforth seize the property and recommended Juan Bermúdez Sánchez or any other person of good character as temporary administrator.

On December 10 following, the lower court issued an order summoning the heirs as well as all the creditors of the inheritance to appear on January 22, 1948 at nine o'clock in the morning to be heard in connection with the petition of Engracia Santos. In that same order the court appointed Juan Bermúdez Sánchez temporary judicial administrator pending the appointment of the permanent administrator. It fixed a bond of $6,000 which upon being furnished enabled him to assume his duties as said administrator. The order

also stated that since the court was aware of the existence of real and personal property, which might be removed or concealed, the marshal was directed to take possession thereof, to make an inventory and to deposit it with any responsible person who might be the temporary judicial administrator, if by that time he had qualified, all this to be done pending the appointment of a permanent administrator or further order of the court. It also provided that if any money or negotiable instruments were found, it should be deposited in the office of the clerk of the court until further order. In compliance with this order the marshal took possession of the property and made the corresponding inventory.

On December 10, 1947, Irma Rivera, in representation of her minor children, opposed the judicial administration and the appointment of Juan Bermúdez Sánchez as administrator. The parties were heard and the opposition was dismissed, thereby ratifying the appointment of the temporary administrator. On December 12, 1947 the latter furnished the bond and assumed his duties. To review this order Irma Rivera filed a petition of certiorari in this Court.

## I

Since no will was made in this case, we must at the outset determine whether a legal heir, assuming that Engracia Santos is such an heir, is entitled to apply for the judicial administration. The controlling statute is § 556 of the Code of Civil Procedure which insofar as pertinent reads thus:

"The executor of the last will of a decedent, or in case that none has been appointed, or if the decedent *left no validly executed will*, the surviving spouse of the decedent or *any heirs at law* or any person claiming as testamentary heir or legatee, or any unsecured creditor with written title, having a claim against the decedent, may, on a proper petition duly showing therein the necessary facts, apply for a judicial administration of the property of said decedent. . . ." (Italics ours.)

The aforesaid § 556 contemplates two situations: (*a*) where a will is validly executed; and (*b*) where decedent left no will. Among the persons entitled to apply for the judicial administration, it mentions the heirs at law (*herederos forzosos*) or any person claiming as testamentary heir or legatee, but it does not mention the legal heirs. Since we must presume that the Legislature did not idly use the words "left no validly executed will", it is clear, in our opinion, that in using the words "heirs at law" it meant "legal heirs", which is a broader term than "heirs at law," for it includes any person who is an heir by force of law in the absence of a will. The heir at law is included in the words immediately following, namely, "any person claiming as testamentary heir." This embraces the heir at law as well as the testamentary heir.

If a different construction were applied to § 556 the legal heirs, who would have been heirs at law under a will, would never be able to apply for the judicial administration because they are not expressly mentioned in § 556. It is significant that the English version of said Section does not use the words "forced heirs" (*herederos forzosos*) but "heirs at law" which mean "legal heirs." See Bouvier's Law Dictionary.

 It having been established that a legal heir is entitled to apply for the judicial administration, the question for decision is whether Engracia Santos is such an heir. She maintains that she is. Her theory is predicated on § 902 of the Civil Code, as amended by Act No. 448 of May 14, 1947 (Sess. Laws, p. 946) which provides insofar as material:

"Section 902.—In default of legitimate or legitimized descendants or ascendants, the natural children legally recognized shall succeed the deceased in the whole of the inheritance.

". . . . . . . .

"Should there be any legitimate ascendants, the recognized natural descendants shall receive only that portion of the inheritance allowed to them by section 768 of this Code."

Pursuant to § 768, as amended by Act No. 13 of 1945 (p. 38) [1] the acknowledged natural children shall have a right to one-half of the hereditary estate after deducting the one-third in usufruct which belongs to the surviving spouse. And under § 738 [2] the legal portion of the legitimate parents or ascendants is the other one-half. If as Engracia Santos alleges, § 902, read together with § 738, is applicable, she is entitled to one-half of the hereditary estate, and this being so, she would have the necessary interest to apply for the judicial administration.

On the other hand, the petitioner in this certiorari, the mother of two natural children, maintains that the paternal grandmother of the latter has no right to the inheritance because she is excluded by § 736 of the Civil Code, as amended by Act No. 447 approved also on May 14, 1947 (Sess. Laws, p. 944) which, insofar as pertinent, provides:

"Section 736.—Forced heirs are:

"1. Legitimate children and descendants with regard to their legitimate parents and ascendants, and legally recognized natural children, with regard to their natural or legitimate parents and ascendants.

"2. *In the absence of the foregoing,* the legitimate parents and ascendants, with regard to their legitimate children and descendants.

"3. . . . . . . ."
(Italics ours.)

---

[1] Section 768, as amended in 1945, provides:

"Should the testator not leave any legitimate children or descendants, but does leave legitimate ascendants, the acknowledged natural children shall have a right to one-half of the hereditary estate.

"This is understood to be without prejudice to the legal portion of the surviving spouse, in conformity with Section 763 of this Code, so that when the surviving spouse is coheir with acknowledged natural children, the latter shall, while the surviving spouse lives, be adjudged in naked property only the third pertaining to the surviving spouse in usufruct."

[2] Section 738 of the Civil Code provides:

"The legal portion of the parents or ascendants is constituted by one-half of the hereditary estate of the children and descendants. The latter may unrestrictedly dispose of the other half with the exception of what is established in section 763 of this Code."

The alleged conflict between §§ 736 and 902 of the Civil Code does not exist. Each one contemplates a different situation. The former applies to testate succession while the latter to the intestate. If the decedent had executed a will, he could not have deprived his acknowledged natural children of one-half of the inheritance, which is the legal portion fixed by § 768. The remaining one half, being of free disposal, could have been left by the testator to any other person. In that event, since the mother is excluded by the natural children under § 736, she could not have complained if his son had left the one-half of the extra portion to any person other than her. But since no will was executed in the instant case, the law comes into play and disposes of the inheritance in the same manner as the deceased would presumptively have done if he had executed a will. Section 902 of the Civil Code which governs intestate heirs, provides, as we have seen, that in the absence of legitimate and legitimized descendants and ascendants, the acknowledged natural children shall inherit the whole estate of the deceased. But when legitimate ascendants concur with acknowledged natural children, and in the absence of legitimate or legitimized descendants, then the acknowledged natural children shall only be entitled, under that same Section read together with § 768, to one-half of the estate from which the third part in usufruct belonging to the surviving spouse shall be deducted. In the present case there is no surviving spouse. Consequently, one-half of the whole inheritance goes to the acknowledged natural children and the other one-half to Engracia Santos, the legitimate ascendant. Since she has the required interest to apply for the judicial administration, we shall pass on to dispose of the other questions raised by Irma Rivera in opposition to the petition for the judicial administration.

## II

■ The petition for judicial administration sets forth that Eugenio Sánchez Santos died intestate and that steps were taken to verify the fact. It does not set forth, how-

ever, what those steps were nor the facts on which she bases her conclusion that he died intestate. It would have been easy for the petitioner, in stating the facts on which her conclusions are based, to attach to her petition a certificate from the registry of wills establishing that there is no record of his having executing' a will. It might be that the deceased did execute a will without leaving any legacy to petitioner and in this case she would not have the required capacity to apply for the administration, since then it devolves on the executor, if any has been appointed, or on any testamentary heir or legatee, to do so. Consequently, if a will had been executed under the stated circumstances the petition would be insufficient.

■ The petitioner in this case also argues that § 556 of the Code of Civil Procedure provides that the application for the judicial administration should be verified and that the verification in this petition is void because it does not comply with the requirements of § 118 of the aforesaid Code. That Section, insofar as pertinent, provides that in all cases of verification of a pleading, *the affidavit of the party* must state what facts are true of his own knowledge and which are known to him on information or belief. It is in the affidavit that said averment must appear. The petition for judicial administration did not disclose it. On the contrary, it is in the sworn certificate at the close of the petition- which states:

". . . that I am the petitioner herein and that the foregoing facts are true of my own knowledge, *except as to the matters which are therein stated to be on my information or belief*, which information I have believed to be true and to which I certify for all legal purposes." (Italics ours.)

It may be inferred from these statements that there are certain facts alleged in the petition for judicial administration which are not true of petitioner's own knowledge. Nevertheless, the petition does not specify which are those facts. It seems advisable to add that the petitioner herein

timely called the attention to this defect in the verification of the petition for judicial administration, for on December 10, 1947 she set it up as one of the grounds for the opposition thereto. Notwithstanding this, the lower court, by an order of January 13, 1948, expressly declared that the affidavit was valid.

Under these circumstances, it seems clear to us that the verification of said petition is void inasmuch as it did not state which facts were true of petitioner's own knowledge and which were by information and belief. *Nazario* v. *Atlas Assurance Co.*, 24 P.R.R. 386; *Vendrell* v. *Pellot*, 21 P.R.R. 139; *Vázquez-Prada* v. *Rossy*, 20 P.R.R. 181; *Rivera* v. *Cámara*, 17 P.R.R. 503 and *Pérez* v. *Executive Council of Puerto Rico*, 16 P.R.R. 677.

We shrink from annulling decisions on grounds of procedure, but in this case, apart from the fact that the substantial rights of Engracia Santos shall not be prejudiced by the annulment, —as she shall be given an opportunity to amend her petition for judicial administration,— the procedural defects, not only those concerning the substantial allegations, but those concerning the affidavit as well, compel us to annul the order.

Consequently, the decision shall be annulled and the case remanded with instructions to grant a reasonable term to Engracia Santos within which to amend her petition for judicial administration, consistent with the principles set forth in this opinion. In the meantime, the Court must take the necessary steps to secure the property.

Mr. Justice Negrón Fernández did not participate herein.